IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMY RACHEL, as Administratrix of the Estate of GREGORY RACHEL, Deceased, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF MOBILE, ALABAMA; MICHAEL T. WILLIAMS, individually and in his official capacity as Chief of Police of the City of Mobile; CHRISTOPHER MCCANN; JOHN JACKSON; JERALD RIPPLE; and EDWARD ELIA, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants. )<br>) | CASE NO. 1:13-CV-00522-WS-M |

**DEFENDANT RIPPLE'S REPLY BRIEF**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Sgt. Jerald Ripple submits this Reply Brief in support of his Motion for Summary Judgment.

**I.  PLAINTIFF CANNOT MAINTAIN ANY DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIM AGAINST DEFENDANT RIPPLE.**

Based on Plaintiff's omnibus reply to summary judgment, it appears that the only claim Plaintiff is now pursuing against Defendant Ripple is the Section 1983 claim based on an alleged failure to monitor Gregory Rachel's medical condition. (Doc. 146, pp. 81-82).  Plaintiff is unable to maintain any such claim against Defendant Ripple in this case.

There is no support that Defendant Ripple committed any constitutional violation in the way he monitored Gregory Rachel nor is there any support for any claim that the death of Gregory Rachel was in any way causally related to any constitutional violation on the part of Defendant Ripple. Stated another way, Plaintiff cannot establish any deliberate indifference to serious medical needs claim against Defendant Ripple under the facts of this case.

To establish deliberate indifference to a serious medical need, a plaintiff "must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Mann v. Taser International, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009); *Valderrama v. Rousseau*, ____ F.3d. ____ , 2015 WL 1138478 (11th Cir. 2015). To satisfy the first prong of the second element, the degree of risk must be "substantial." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). In order to have subjective knowledge, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Secretary for Department of Corrections*, 508 F.3d 611, 617 (11th Cir. 2007). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person knows." *Harper v. Lawrence County*, 592 F.2d 1227, 1234 (11th Cir. 2010).

Sgt. Ripple testified that he was able to assist the other officers in getting Greg Rachel handcuffed within less than two minutes after his arrival on the scene. (Ripple

Depo. p. 66, lines 13-20).  Sgt. Ripple decided to place Gregory Rachel in four point restraints due to his size, the nature of the call, and the fact that Rachel was still continuing to kick and resist even after being handcuffed.  (Ripple Affidavit, ¶ 10; Jackson Depo. p. 145, lines 4-11).  Sgt. Ripple walked to his patrol car and grabbed leg shackles and walked back over to where Rachel was laying on the ground.  (Ripple Affidavit, ¶ 11).  Sgt. Ripple describes the placement of the leg shackles and their attachment to the handcuffs around the wrists with an additional pair of handcuffs which allowed Rachel to have some movement with his legs, but also precluded him from kicking or continuing to fight with the officers. (Ripple Affidavit, ¶ 11).

Rachel continued to yell at the officers and was still talking after the four point restraint was applied. (McCann Depo. p. 181, line 23 to p. 183, line 13).  After placing Rachel in the four point restraints, the officers turned him at a 45 degree angle to his side and made sure that his head was turned to the side and that he was breathing.  (Ripple Affidavit, ¶ 12). Sgt. Ripple stood next to Rachel and continued to monitor him and watch his breathing. (Ripple Affidavit, ¶ 12).  Sgt. Ripple then instructed Officer McCann to get his patrol car and pull it closer so that they could place Mr. Rachel in the back of the patrol car while they continued to secure the scene.  (Ripple Affidavit, ¶ 12).

Plaintiff tries to paint a picture that Rachel was not being monitored for some period of time after the four point restraints were applied, but there is no support for that assertion in the record.  Sgt. Ripple testifies that he stood next to Mr. Rachel and continued to monitor him and watched his breathing.  (Ripple Affidavit, ¶ 12).  Sgt. Ripple continued to observe Greg Rachel breathing as he could see his chest and back

3

rise and fall. (Ripple Affidavit, ¶ 12; Ripple Depo. p. 58, lines 25 to p. 59, line 9). Sgt. Ripple also observed Rachel talking and mumbling and could see what appeared to be snot bubbles coming in and out of his nose during that time. (Ripple Affidavit, ¶ 12; Ripple Depo. p. 58, lines 25 to p. 59, line 9). After the officers picked Mr. Rachel up and were moving him toward Officer McCann's patrol car, Sgt. Ripple noticed that he appeared to be limp and was concerned that he might not be breathing. (Ripple Affidavit, ¶ 13). They had only carried Mr. Rachel ten to fifteen feet when Sgt. Ripple noticed his condition. (Ripple Affidavit, ¶ 13). Sgt. Ripple states that he did not observe Mr. Rachel to be in any medical distress prior to that point. (Ripple Affidavit, ¶ 13). He further states that he last observed Mr. Rachel breathing less than a minute before they picked him up to try and move him to Officer McCann's patrol car. (Ripple Affidavit, ¶ 14; Kirkham Depo. – Vol II – p. 78; Ripple Depo. p. 59, lines 10-14).

When Sgt. Ripple noticed that Mr. Rachel did not appear to be breathing, he instructed the other officers to place Rachel on the ground so that he could check on him. (Ripple Affidavit, ¶ 13). Sgt. Ripple checked for a pulse and checked to see if he was breathing. (Ripple Affidavit, ¶ 13). Mr. Rachel did not appear to be breathing at that point. (Ripple Affidavit, ¶ 13; Ripple Depo. p. 61, line 25 to p. 62, line 15). Sgt. Ripple also shined a flashlight into Mr. Rachel's eyes and his eyes appeared fixed and dilated so Sgt. Ripple called for paramedics. (Ripple Affidavit, ¶ 13; Ripple Depo. p. 62, lines 16-23). It was at that time that a neighbor walked up and offered his assistance because he was a paramedic. (Ripple Affidavit, ¶ 14; Ripple Depo. p. 62, lines 13-24). The

paramedic asked the officers to remove the leg shackles and handcuffs and immediately started CPR.  (Ripple Affidavit, ¶ 14; Declaration of Patrick Joseph Phillips).

Plaintiff devotes one paragraph of her 94 page response to summary judgment to argue that Defendant Ripple should have some liability on the theory that Sgt. Ripple committed a constitutional violation by failing to monitor Plaintiff's medical needs. (Doc. 146, pp. 81-82).  Plaintiff seems to rely on the testimony of her purported police expert, George Kirkham, to support this deliberate indifference to medical needs claim against Defendant Ripple.  However, nothing offered by Mr. Kirkham can support any such claim against Defendant Ripple. Even if the Court allows this speculative and unsupported testimony of George Kirkham, there is still not sufficient evidence to support any Section 1983 claim against Sgt. Ripple.

Sgt. Ripple arrived at the scene of this incident while the other officers were still struggling with Mr. Rachel.  He assisted in quickly getting Mr. Rachel restrained with handcuffs and leg shackles.  He continued to monitor Mr. Rachel and could tell he was breathing.  The officers were then going to place Mr. Rachel in a patrol car so that they could finish securing the scene.  It was at that point that Sgt. Ripple noticed that Mr. Rachel appeared to be in some type of medical distress and might not be breathing. Sgt. Ripple last observed Gregory Rachel breathing less than a minute prior to that point. These facts simply do not support any Section 1983 claim against Defendant Ripple on a failure to monitor medical needs theory.

Plaintiff relies on *Bozeman v. Orum*, 422 F.3d. 1265 (11th Cir. 2005) to argue that the Defendants generally failed to monitor Rachel's serious medical need in this case.  In

*Bozeman*, the Eleventh Circuit denied summary judgment to correctional officers and others based on claims of excessive force and deliberate indifference to medical needs under Section 1983. *Bozeman v. Orum*, 422 F.3d. 1265 (11th Cir. 2005). The facts of that case are much different than those in the present case. In that case, the correctional officers continued to apply force to the decedent after he was no longer a threat and, more importantly, failed to call for medical help or do anything to provide aid until 14 minutes after the point they observed he was not breathing. *Bozeman v. Orum*, 422 F.3d. at 1272.

The testimony in that case was that the correctional officers continued to carry the decedent and move him around during that 14 minute time span while it was apparent he was lifeless and not breathing. *Bozeman v. Orum*, 422 F.3d. at 1273. The court noted that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Bozeman v. Orum*, 422 F.3d. 1265, 1273 (11th Cir. 2005) (quoting *Harris v. Coweta County*, 23 F.3d. 388, 393 (11th Cir. 1994). The court in *Bozeman* denied summary judgment to those correctional officers because the evidence indicated that they were subjectively aware that the decedent was not breathing for 14 minutes and failed to check his condition, call for medical assistance, administer CPR or do anything else to help. *Id.*

In the present case the facts are decidedly different. The Court must analyze this claim against Defendant Ripple in the context of his subjective knowledge and awareness and the objective conditions related to his involvement. As stated previously, to prove deliberate indifferent to a serious medical need, Plaintiff must show (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is

6

more than gross negligence. *Youmans v. Gagnon*, 626 F.3d. 557, 564 (11th Cir. 2010). "The best response to a serious medical need is not required by federal law in these cases" *Id*. "Judicial decisions addressing deliberate indifference to a serious medical need, like decisions in the Fourth Amendment Search and Seizure realm, are very fact specific." *Id.* Thus, each specific case alleging deliberate indifference to medical needs is fact specific and must be decided on those particular facts.

Defendant Ripple asserts that the facts relating to his involvement in this incident do not rise to the level of any constitutional violation amounting to deliberate indifference to any serious medical need. He monitored and observed Mr. Rachel breathing and it was approximately one minute between the time he last observed him breathing and the time he called for medical and started checking for vital signs. It was at that point when the neighbor/paramedic arrived and started performing CPR. These facts are a long way from the 14 minute delay with no assistance cited by the court in *Bozeman v. Orum*.

Defendant Ripple asserts that he is not guilty of any constitutional violation in this regard, but also requests entry of summary judgment in his favor based on qualified immunity. Plaintiff fails to cite any case with similar enough facts to support any claim that the law was clearly established at the time of these events on May 1, 2012 for Defendant Ripple to be denied entitlement to qualified immunity. No liability arises under the Constitution for "an official's failure to alleviate a significant risk that he should have perceived but did not . . ." *Burnette v. Taylor*, 533 F.3d. 1325, 1331 (11th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d

811 (1994)). "As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d. 1325, 1331 (11th Cir. 2008). Thus, "[e]ach individual defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d. 1325, 1331 (11th Cir. 2008). The other cases cited by Plaintiff with regard to the medical needs claim are factually dissimilar to the present case and involve cases where individuals were suffering gunshot wounds or other obvious, serious medical needs that were ignored or left unattended for a sufficient length of time to support a deliberate indifference to medical needs claim. There is no case that Plaintiff can cite to that clearly established the law prior to May 1, 2012 that Defendant Ripple should have known that his limited involvement in securing Gregory Rachel and monitoring him for that brief period of time until he noticed that he was not breathing would amount to a constitutional violation. For this reason, Defendant Ripple is entitled to summary judgment based on qualified immunity.

There is also another important reason why Defendant Ripple is entitled to summary judgment in this case. Plaintiff's medical expert, Dr. Carl Adams, opines that Gregory Rachel's death was caused as a result of cardiac arrhythmia induced by multiple taser shocks. Dr. Adams did not link any other actions or omissions of the police officers to the cause of death of Gregory Rachel. There is no evidence or testimony in the record to establish any subjective or objective awareness or observation of breathing difficulties until that approximately one minute window between Sgt. Ripple last observing Mr. Rachel breathing and the time that he noticed that Rachel appeared to be in medical distress and not breathing. That fact combined with the medical testimony of Dr. Adams

that Rachel died from a cardiac arrhythmia induced by the taser shows that there is no support for any theory that any act or omission of Sgt. Ripple was the cause of death of Gregory Rachel. The testimony of Dr. Adams negates any causal link between Defendant Ripple and the cause of death in this case. Moreover, the Plaintiff can point to no evidence to support any finding that Defendant Ripple acted in a manner that can be seen as a proximate cause of the death of Gregory Rachel. There is no testimony that Sgt. Ripple could have done anything different to prevent Rachel's death. For these reasons as well, Defendant Ripple is entitled to summary judgment.

## II.   CLAIMS DUE TO BE DISMISSED BASED ON THE CONCESSION OF THE PLAINTIFF.

### A.   Plaintiff concedes that the state law claims against Defendant Ripple in Count Four are due to be dismissed.

In her response to Defendant Ripple's Motion for Summary Judgment, Plaintiff concedes that the state law claims alleged against Defendant Ripple in Count Four of the Complaint are due to be dismissed. (Doc. 146, p. 89).

### B.   Any official capacity claim against Defendant Ripple is due to be dismissed as a matter of law.

Plaintiff voluntarily dismissed the Section 1983 claims alleged against the City of Mobile in Count One of her Complaint. (*See* Doc 104 – Stipulation of Dismissal; Doc 106; Doc 115 – Second Amended Complaint).

Plaintiff acknowledges in her omnibus response to summary judgment that any claims against Defendants McCann and Jackson in their official capacity were dismissed

with the dismissal of the City of Mobile as to those claims. (Doc. 146, p. 92).  Although Defendant Ripple asserts in his Motion for Summary Judgment that any official capacity claim against him is also due to be dismissed on the same grounds (Doc. 124, pp. 3-4), Plaintiff fails to provide any argument or concession with regard to that issue in her response to summary judgment. As stated previously, official capacity lawsuits, in contrast to individual capacity claims, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).

There is no reason that the official capacity claim against Defendant Ripple should not be similarly dismissed.  Since the Section 1983 claim against the City was dismissed, any official capacity claim against Defendant Ripple was similarly dismissed at that time.  Even if there was an argument that the official capacity claim against Defendant Ripple was not dismissed by virtue of the dismissal of the Section 1983 claim against the City, Plaintiff makes no argument in opposition to Defendant Ripple's position that the claim was dismissed.  Thus, the official capacity Section 1983 claim against Defendant Ripple is due to be dismissed as well.

    **C.**    **Plaintiff provides no support for any Section 1983 excessive force claim against Defendant Ripple.**

Plaintiff does not appear to make any argument in opposition to Defendant Ripple's position that he has no liability for any Section 1983 excessive force claim in this case. Plaintiff's omnibus response to summary judgment is replete with allegations of

force used by Officers McCann and Jackson; however, it is undisputed that Sgt. Ripple was not at the scene while these events were allegedly occurring. When Sgt. Ripple arrived on the scene he saw Officers McCann and Jackson in the ditch near the street with Gregory Rachel and noted that they appeared to be spent as they were trying to restrain Mr. Rachel. Sgt. Ripple tried to assist them in that effort by removing Gregory Rachel's right arm from underneath his body. (Ripple Affidavit, ¶ 9; Ripple Depo., p. 50, line 25 to p. 51, line 18).

Sgt. Ripple noted that Gregory Rachel would not release his arm and was concerned about the possibility of a concealed weapon. (Ripple Depo. p. 46, line 17 to p. 47, line 5). Sgt. Ripple then stated that he attempted to strike Rachel in what he called the solar plexus a few times with his fist as a stun technique to get him to release his arm. (Ripple Affidavit, ¶ 8; Ripple Depo. p. 47, line 18 to p. 49, line 20; Kirkham Depo. – Vol. II – p. 17). However, when Sgt. Ripple described the area of the body where he applied these blows, he actually described the area of the lower back just above the hip. (Ripple Depo. p. 48, lines 5 to 22). Sgt. Ripple testified that these blows did not have any effect on Gregory Rachel and he continued to resist their efforts. (Ripple Affidavit, ¶ 8; Ripple Depo. p. 49, lines 15 to 20).

Sgt. Ripple then briefly applied some downward force for a few seconds to Rachel's right shoulder with his knee to get him to release his right arm. (Ripple Affidavit, ¶ 9; Ripple Depo. p. 50, line 25 to p. 51, line 18). Sgt. Ripple testified that from the time he arrived on the scene they were able to get Mr. Rachel secured with the handcuffs within one to one and one-half minutes. (Ripple Depo. p. 66, lines 13 through

20). Plaintiff fails to offer any evidence of any unconstitutional force on the part of Defendant Ripple and Plaintiff fails to offer any argument that the limited amount of force used by Sgt. Ripple was excessive and unconstitutional.

Based on these facts, there can be no showing that Sgt. Ripple committed any constitutional violation amounting to an excessive force claim under Section 1983. Plaintiff appears to concede this issue by not providing any argument in opposition to Sgt. Ripple's Motion for Summary Judgment as to the excessive force claim, but Plaintiff does not explicitly make any such concession. Nevertheless, these facts simply do not support any Section 1983 excessive force claim against Sgt. Ripple. Defendant Ripple did not use any force that can be deemed constitutionally excessive in this case nor did he observe any force used by other officers that was excessive and that he failed to intervene and address.

There is no showing that any use of force by Defendant Ripple was unreasonable in a constitutional sense. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Graham v. Connor*, 490 U.S. 386 (1989); *Hadley v. Gutierrez*, 526 F.3d. 1323, 1329 (11th Cir. 2008). In addition, Defendant Ripple cannot be seen as having failed to intervene in any use of unconstitutional force since he was not at the scene and did not witness any of the other alleged force used by Defendants McCann and Jackson. *Priester v. City of Riviera Beach*, 208 F.3d. 919 (11th Cir. 2000); *Keating v. City of Miami*, 598 F.3d. 753 (11th Cir. 2010). Moreover, the use of the four point restraint is also not deemed to be excessive force under these circumstances. *See Lewis v. City of West Palm Beach* 561 F.3d. 1288

(11th Cir. 2009) (determining that use of four point restraint did not violate the Fourth Amendment); *Garrett v. Athens-Clarke Cnty.,* 378 F.3d. 1274, 1280 (11th Cir. 2004).

Even if the facts alleged against Sgt. Ripple could rise to the level of a constitutional violation with regard to the excessive force claims, he would still be entitled to summary judgment based on qualified immunity. The analysis in this Fourth Amendment context is very fact specific and this Defendant is not aware of any case providing Defendant Ripple with clearly established law that his involvement in the brief period of time to restrain Gregory Rachel could in any way be deemed unlawful or unconstitutional. Plaintiff fails to cite any case in opposition to Defendant Ripple's Motion for Summary Judgment as to the excessive force claims under Section 1983 and Defendant Ripple has met his burden to establish his entitlement to summary judgment. As stated previously, Plaintiff cannot establish any Section 1983 wrongful death claim against Defendant Ripple and the Plaintiff is unable to bring any other excessive force claim in this case. *Estate of Gilliam ex rel. Waldrop v. City of Prattville*, 639 F.3d. 1041 (11th Cir. 2011), *cert. denied*, 132 S.Ct. 817 (2011) (holding that Alabama survivorship law applies to Section 1983 so that unfiled tort claims are abated by death; thus, only viable claim is one for wrongful death.) Since the law was not so clearly established on May 1, 2012 that the actions of Defendant Ripple would rise to the level of a constitutional violation and Plaintiff has not pointed to any case law prior to that date placing the question beyond debate, Defendant Ripple is entitled to summary judgment as to any excessive force claim based on qualified immunity. *Ashcroft v. al-Kidd*, 131 S. Ct.

2074, 2083 (2011); *Hoyt v. Cooks*, 672 F.3d. 972 (11th Cir. 2012); *Bussey-Morice v. Gomez*, 587 Fed. Appx. 621 (11th Cir. 2014).

## CONCLUSION

Defendant Ripple moves this Court for entry of a summary judgment in his favor as a matter of law as to all claims asserted against him in the Complaint, as last amended.

/s/ Thomas O. Gaillard III
THOMAS O. GAILLARD III (GAILT9459)
Attorney for Defendant Jerald Ripple

**OF COUNSEL:**
SATTERWHITE, DRUHAN,
GAILLARD & TYLER LLC
1325 Dauphin Street
Mobile, Alabama  36604
Telephone: (251) 432-8120
Facsimile: (251) 405-0147
tom@satterwhitelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Erik S. Heninger, Esquire | Raymond L. Bell, Jr. Esquire |
| Drew Haskins, IV, Esquire | Jonathan B. Mabire, Esquire |
| Latisha Rhodes Davis, Esquire | James B. Rossler, Esquire |
| Mark A. Newell, Esquire | |
| Michael D. Strasavich, Esquire | James D. Brandyburg, Esquire |
| Betsy P. Collins, Esquire | |
| Ricardo A. Woods, Esquire | |

/s/ Thomas O. Gaillard III
OF COUNSEL