## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

AMY RACHEL, as Administratrix    *
of the Estate of GREGORY        *
RACHEL, deceased;               *
                                *

    Plaintiff,                   *
                                *

v.                              *      Civil Action No. 1: 13-00522
                                *

CITY OF MOBILE, et. al        *
                                *

    Defendants.               *

## OFFICER McCANN'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Officer Christopher McCann ("McCann"), and replies to Plaintiff's response in opposition as follows:

## I. PLAINTIFF CONCEDES THAT OFFICER McCANN HAS ESTABLISHED HIS INITIAL BURDEN.

A government official defending a claim on the basis of qualified immunity must *first* establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred, then the burden shifts to the Plaintiff. *Griswold v. Ala. Dept. of Indus. Relations,* 903 F.Supp. 1492, 1497 (M.D. Ala. 1995). Plaintiff concedes that McCann has satisfied his initial burden:

> Plaintiff does not dispute that McCann was acting within his scope of discretionary authority during the incident, nor does Plaintiff dispute that McCann's arrest of Rachel was justified and lawful.

[Doc. 146, p. 56].  McCann is thus entitled to qualified immunity as to all claims raised by Plaintiff under § 1983 unless *Plaintiff* proves by *substantial* evidence that McCann 1) violated Mr. Rachel's constitutional rights <u>and</u> 2) the rights were clearly established.  *See Griswold v. Alabama Dept. of Indus. Relations,* 903 F.Supp. at 1497.

## II.    NO VIOLATION OF CLEARLY ESTABLISHED RIGHTS

### A. Provocation or "reasonableness in *initiating* an arrest" is not subject to Fourth Amendment scrutiny in the Eleventh Circuit.

Plaintiff argues that McCann's actions in approaching Mr. Rachel (hereinafter "Rachel") "without taking into account Rachel's mental illness, and without a countervailing need" "provoked a violent situation" which led to Rachel's death.  In support, Plaintiff cites *Billington v. Smith,* 292 F.3d 1177 (9th Cir. 2002), stating that "where an officer intentionally or recklessly provokes a violent confrontation, *if* the provocation is an independent Fourth Amendment violation, he may be liable for his otherwise defensive use of deadly force."  *Billington* presents a question of reasonableness of "pre-seizure conduct", which is actionable in the Sixth and Ninth circuits.  However, other circuits have held that "pre-seizure conduct is not subject to Fourth Amendment scrutiny."   *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("The Fourth Amendment prohibits unreasonable *seizures;* not unreasonable, unjustified or outrageous conduct in general.").

2

For instance, in *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992), our sister circuit held that "[t]he constitutional right to be free from unreasonable seizure has never been equated by the court with the right to be free from a negligently executed . . . arrest." *Id.*  The court clarified its holding so as not to imply that the officer's actions leading up to the use of force were in any way negligent. However, the court reasoned that "even a negligent departure from established police procedure does not necessarily signal violation of constitutional protections." *Id.* at 1276.  *Fraire* was later applied by the Northern District of Alabama in a decision affirmed by the Eleventh Circuit.  *Scheuerman v. City of Huntsville, AL*, 276 F. App'x 896 (11th Cir. 2008).

Consistent with *Fraire* and *Scheuerman*, McCann's initiation of a lawful arrest when Rachel exited the residence is not subject to Fourth Amendment scrutiny. It is undisputed that McCann had probable cause that Rachel had committed domestic violence and attempted murder. (Ex. 3, Barber Aff.). Therefore, McCann had no other choice but to arrest Rachel for the safety of all involved. (Ex. 15, Kirkham Depo., p. 71).  More importantly, Rachel's combative resistance towards McCann led to the use of force, not McCann's actions in initiating the arrest.

Since provocation is not actionable as a Fourth Amendment violation in the Eleventh Circuit, it follows that the violation is also not clearly established.

3

McCann addresses Plaintiff's other arguments as additional support that provocation is insufficient to establish a violation in any circuit on these facts.

### i. McCann had a countervailing need to initiate the arrest.

Sgt. Ripple instructed McCann not to enter the house to arrest Rachel because Rachel may have had weapons and/or barricaded himself inside the home with other individuals. (Ex. 9, McCann Depo. pp. 148-149; Ex. 4, Ripple Aff. p. 4). McCann waited outside to watch the Rachel house to make sure Rachel did not try to leave the scene. (Ex. 9, McCann Depo., p. 149). However, Rachel's unexpected exit from the house was a material change in circumstances creating a countervailing need to initiate the arrest in order to protect the public. The scene was no longer secure, and no one "knew what [Rachel was] going to do." (Ex. 9, McCann Depo. pp. 148-149); *see also* (Ex. 15, Kirkham Depo., p. 144).

McCann made a split-second decision to maintain the safety for the neighbors, officers, and for Rachel whose actions had been irrational and unpredictable. (*See* Ex. 3, Barber Aff.). McCann determined that it would be safer to apprehend Rachel, while he was outside and appeared to be unarmed rather than allow him to flee the scene as in most domestic cases or reenter the home where he could obtain a weapon. (Ex. 9, McCann Depo., p.149). Any reasonable officer on the scene would have made the same decision to arrest Rachel when he exited the residence.

### ii. MO-2011-03 does not govern handling dangerous persons who are *in a position to harm* others.

Plaintiff argues that McCann failed to comply with the "Recognizing and handling persons with mental illness" policy (hereinafter "MO-2011-03") when he pulled out his Taser and yelled at Rachel.  For starters, MO-2011-03 sets out what officers *should*, as opposed to *must,* do when encountering a person with mental illness.  Also, Rachel's conduct falls outside of the policy. The policy states:

> **If the person is acting dangerously, but not directly threatening any other person or self, or is in a position that they cannot harm anyone, the person should be given time to calm down.**

[Doc. 146-18].  From this a reasonable officer could conclude that when the person is acting dangerously and is in a position to cause harm to themselves or others, the officer has discretion as to whether the person should be given time to calm down.

"Officer discretion in areas specifically governed by applicable laws, ordinances, or departmental rules, regulations or procedures is minimal." (Ex. 16, *Use of Discretion)*.  However, minimal does not mean non-existent.  Rachel's violent attack on his wife, irrational behavior, unknown intentions, and ability to flee the scene on foot or by vehicle put him in position to cause harm to himself and others, which foreclosed his opportunity "to calm down".  Plaintiff's expert admitted that the officers had no way of knowing what was going through Rachel's mind or whether he would attempt to kill his wife, or anyone else, again. (Ex. 15,

5

Kirkham Depo., pp. 130-132).  As the officer on the scene, McCann had to prevent Rachel from harming himself and others.   McCann's actions were entirely consistent with the City's policies to achieve this objective.  *See* Ex. 17, *Use of Force Policy* (*"*Officers are expected to achieve control, and to the extent possible, exhaust other reasonable means before resorting to the use of deadly force.") and Ex. 18, *Less-Lethal Weapons Policy* ("Officers should assess the incident to determine which less-lethal technique or weapon will best *de-escalate* the incident and bring it safely under control.").  Any reasonable officer on the scene would have also concluded that the situation was not secure and would have proceeded to apply other policies and training beyond that of MO-2011-03.

### B. Plaintiff's diminished capacity cases do not give Officer McCann, or any reasonable officer, fair warning.

Plaintiff argues at length that McCann "failed to take into account 'the diminished capacity of an unarmed detainee . . . when assessing the amount of force exerted." [Doc. 146, p. 65].  Plaintiff's "diminished capacity" argument rests exclusively on out-of-circuit cases (primarily *Martin v. City of Broadview Heights*, 712 F.3d 951 (6th Cir. 2013) and *Sheehan v. City and County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014)), none of which can prove that the alleged violation is clearly established in the Eleventh Circuit.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1352 n. 22 (11th Cir. 2002).  Therefore, those cases do not give McCann the

"fair and clear warning" required by the United States Supreme Court's decision in
*Hope v. Pelzer*, 536 U.S. 730 (2002).

Conversely, the situations confronting the law enforcement officers in the
Sixth Circuit's *Martin* case and the Ninth Circuit's *Sheehan* case are factually and
legally distinguishable in critical respects.  However, even if these cases applied in
this circuit, McCann's use of force would not constitute a constitutional violation
under *Martin* and *Sheehan*.  In *Martin v. City of Broadview Heights*, 712 F.3d 951,
the police officer confronted a naked male who was "obviously unarmed" and who
had not committed *any* act of violence.  *Id.*  While the court held that "the officers
violated clearly established law [of that circuit] that required them to take into
account 'the diminished capacity of an unarmed detainee . . . when assessing the
amount of force exerted[;]'" **the Sixth Circuit, nevertheless, repeatedly
emphasized that the person being subdued by excessive force was "unarmed",
"present[ed] a minimal safety risk", and did "not pose a material danger to
himself or others".** *Id.* at 961-962.  Thus, the condition precedent required to
trigger an officer's obligation in the Sixth Circuit to "de-escalate the situation and
adjust the application of force downward" when dealing with a person of
"diminished capacity" is that the person must not pose a threat to the officers or
anyone else.  That was undisputedly not the situation McCann faced when he
responded to Plaintiff's 9-1-1 call for help.

Also, in *Sheehan v. City and County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014), the police were called to transport a mentally ill woman ("Sheehan") to a mental health facility for involuntary commitment. The woman attempted to attack the officers' *when they entered her room*. The officers retreated to the hallway, drew their weapons [deadly force], and forced their way back into Sheehan's room. When Sheehan again threatened the officers with a knife, the officers shot her five or six times. *Id*., at 1215-16. The Ninth Circuit held that the officers should not have forced a second entry because (1) Sheehan posed no threat to anyone, including herself, so long as she was allowed to remain alone in her home and (2) there was "no countervailing need" justifying a forced entry. McCann did not force his way into Rachel's home. Rachel came outside acting irrationally and when he exited the residence he posed a threat to innocent bystanders and himself. The need to protect and maintain safety was the countervailing need justifying the arrest.

Of significance, the *Sheehan* court stated:

[T]he tactics to be employed against an emotionally distraught individual who is creating a disturbance or resisting arrest ***are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense.*** In the former instance, increasing the use of force may, in some circumstances at least, exacerbate the situation; ***in the latter, a heightened use of less-than-lethal force will usually be helpful in bringing a dangerous situation to a swift end***.

*Sheehan*, 743 F.3d at 1226-27 (citing *Deorle v. Rutherford,* 272 F.3d 1272, 1282–83) (9th Cir. 2001) (emphasis added).  Thus, the *Sheehan* Court recognized that, under the established law in that circuit, the fact that an emotionally disturbed person was "an armed and dangerous criminal who has recently committed a serious offense" constituted "a countervailing need" which thereby permits "a heightened use of less-than-lethal force [that] will usually be helpful in bringing a dangerous situation to a swift end." *Id*. at 1227.

Thus, McCann's "heightened use of less-than-lethal force" in order to bring a "dangerous situation to a swift end conformed to the established law set out in *Sheehan*.  Unlike Sheehan, who had plainly stated her intention to remain shut up in her home and her objection to anyone entering, Rachel was "on the move", walking around outside his house, when McCann decided to arrest him in order to protect himself and the public.  Rachel was fully clothed and McCann could not confirm, prior to arresting him, that Rachel was unarmed.  Although *Sheehan* provides no support for Plaintiff's claim that McCann should not have engaged Rachel, *Sheehan* supports McCann's motion for summary judgment.

The severity of the crime is a major factor in determining the reasonableness of force.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  Plaintiff's entire response attempts to convince the Court that this case is just about McCann's handling of a mentally ill individual, without consideration of the most important

fact in the case— that Rachel had committed acts of violence which clearly constituted felonies under Alabama law and that he was a threat to others before and after McCann was dispatched to the Rachel house.

In an effort to downplay Rachel's acts of violence in the early morning hours of May 1, Plaintiff understates, to the point of omission, Rachel's violent acts on that night.  Specifically, Plaintiff's sole mention of Rachel's physical contact with Plaintiff is set out in her Fact No. 6:  "When Amy started back down the hallway Greg grabbed Amy by the face, and Amy fell."  In point of fact, Rachel *choked* Plaintiff and she "fell" because Rachel *tackled her* and he *had tried to kill her*. (Ex. 19, pp. 14-15; Ex. 20, p. 1; Ex. 21, p. 1; Ex. 28, p. 3-5).

Plaintiff's "Facts" also omit the fact that Rachel broke Plaintiff's finger (Ex. 19, p. 15); omit the fact that Rachel's assault caused bloody wounds on her face, neck, back, and fingers (Ex. 19, pp. 13, 14, 15), omit the fact that Plaintiff defended herself during this violent attack by biting Rachel's finger (Id. at 15), and omit the fact that Rachel's attack on Plaintiff was so violent that she was afraid that their children were about to witness their father (Rachel) kill their mother (Ex. 8, Fresh Depo., p. 171, lines 3-13).  Regardless of Plaintiff's failure to acknowledge them, these facts are undisputed and completely refute Plaintiff's unfounded characterization of Rachel as "non-violent" and a "supplicating citizen". [Doc. 146, p. 65].  Significantly, Plaintiff cites **no** cases which hold that a person's mental

illness trumps an officer's duty to arrest that person for crimes of violence the person just committed. Thus, while Rachel's mental state was a factor to be considered, it did not obviate McCann's duty to arrest Rachel for the violent battery he committed on Plaintiff.

### i. Provocation as an independent Fourth Amendment violation is not clearly established in this circuit.

In keeping with Plaintiff's contention that Rachel was "non-violent" and "a supplicating citizen"[1], **all** of the Eleventh Circuit cases cited by Plaintiff as providing the requisite "fair warning" to McCann involve persons who had **not** committed **violent** crimes. *See Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)(force used to arrest a suicidal man sitting alone on the kitchen floor with a telephone cord around his neck and a knife); *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) (force use to silence woman, who had already been arrested without resistance for disorderly conduct and obstruction); *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008) (force used to arrest landlord for obstruction after he asked officers to move their vehicles in his apartment complex); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (force used to arrest woman for honking her vehicle's horn in violation of noise ordinance); *Brown v. City of Huntsville*, 608 F.3d 724 (11th Cir. 2010) (force used to arrest two people for violating noise ordinance); *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (force used after

---

[1] [Doc. 146, pp. 67-71]

man was arrested without resistance for disorderly conduct); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997) (force used to arrest fleeing man for unknown crime); *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998) (force used to arrest manager for unlawful interference with an officer after manager challenged the officer's knowledge of customer service laws).   Although these cases contain general principles regarding the law of qualified immunity, none provide any "fair warning" to McCann regarding the use of force in effecting an arrest of a person who committed acts of violence.

### C. Force used to affect an arrest of a noncompliant and violent criminal suspect does not create a constitutional violation.

A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest.  *Exparte City of Tuskegee,* 608 F.3d 724, 740 (11th Cir. 2010).  Use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. Huntsville, Alabama,* 608 F.3d 724, 738 (11th Cir. 2010).  Thus, "[a]n officer is entitled to qualified immunity from an excessive force claim unless **every** reasonable officer in his position would have concluded that his use of force was unlawful." *Ainsworth v. Norris*, 469 Fed. Appx. 775, 777 (11th Cir. 2012) (emphasis added).   McCann states that force was necessary because Rachel continued to resist.

### i.  Plaintiff's witnesses cannot dispute resistance.

Plaintiff's witnesses, Tiffany Brown, Robert Brown, Nicole Phillips, Patrick Phillips, and Kristy Adams, failed to create a genuine issue of material fact regarding whether Rachel was resisting arrest.

***The Browns*** *(Intermittent witnesses)*:  Robert and Tiffany Brown did not see the entire incident.  Ms. Brown declares as follows: "the *first* thing I noticed was shouting. . . I heard more than one voice shouting."  Ms. Brown's account starts in the middle of the encounter and goes on to show that she viewed the incident intermittently missing parts of the encounter with the officers throughout the remainder of incident.  (Ex. 22, T. Brown Aff.).  Ms. Brown's declaration, however, is helpful to show that Robert Brown was also an intermittent observer. Ms. Brown's declaration suggests that Robert Brown began viewing the incident after she started viewing.  Indeed, Mr. Brown observed <u>less</u> of Mr. Rachel's arrest because unlike Ms. Brown, Mr. Brown did not see Rachel being tased. (Ex. 22, T. Brown Aff; Ex. 23, R. Brown Aff.).  Mr. and Mrs. Brown's accounts show that they did not view the incident from beginning to end and thus cannot create a genuine issue of material fact as to whether Rachel resisted arrest.

### ii.  The remaining witnesses prove Rachel's resistance.

***Kristi Adams***: Ms. Adams drafted a statement after the incident stating:

> When Greg come running out of the house down drive
> arms raised babbling, the two officers on the scene then

> had to tase Greg at least 4 times, then when he wouldn't
> surrender the two 1st responding officers had to use
> batons on him, also there were some kicking and pushing
> by officers trying to get Greg to stop *resisting*.

(Ex. 24, Adams Statement).  In Ms. Adams recorded statement taken later that day she also said "they couldn't subdue him." [Ex. 25, Adams Statement 2, pg. 2 of 6].

*The Phillips*:  Patrick Phillips drafted and signed a statement right after the incident stating, "Heard screaming outside of house at 3:35 went outside, saw a male *resisting arrest*, went inside to check on family"  (Ex. 26, Phillips Statement). Nicole Phillips's declaration also states, "the officers were really agitated from resisting and I think they were being aggressive."  Ms. Phillips statement indicates that Rachel resisted arrest.   Ms. Phillips's account shows that the officers *aggressively* attempted to lift Rachel to get him into the patrol car, and thus cannot create an issue of material fact as to resistance.

  Sgt. Ripple and Lt. Elia also confirmed that Rachel refused to comply with the commands of the officers.  (Ex. 4, Ripple Aff. p. 5-6; Ex. 12, Elia Depo., pp. 24-25).  Likewise, Plaintiff's expert Dr. Kirkham agrees that the evidence proves that Rachel was resisting.  He states taking a combative stance against the officers is resistance, and not responding to the officers' commands is passive resistance. (Ex. 15, Kirkham Depo., p. 82-83).

The testimony establishes that Rachel resisted, and thus a higher degree of force could be reasonable given the severity of the crime at issue.  However, the

14

objective evidence shows no signs that the officers used a high degree of force to affect the arrest.   In reviewing the autopsy evidence, Plaintiff's expert Dr. Carl Adams noted:  "[T]here wasn't anything like a gigantic hematoma or ecchymosis that you would say, gee, this guy got the hell beat out of him."  (Ex. 14, Adams Depo., p. 183, lines 7-13).  Rachel had no corporal or blunt force trauma, but only contributory abrasions on his wrist and ankles where he was shackled.  (Ex. 14, Adams Depo., p. 183, lines 7-24; Ex. 27, Adams Depo., p. 185, lines 6-16). Plaintiff has produced no evidence to the contrary.  Therefore, Plaintiff failed to establish that McCann violated Rachel's constitutional rights.

### D. Even if an inference can be made that the alleged force *violated* Rachel's rights, the violation cannot be clearly established.

"[I]f the court were to hold that the officers violated the Fourth Amendment, the officers are still entitled to immunity if their actions resulted from reasonable mistakes as to the legality of their actions."  *Byther ex rel. Byther v. City of Mobile*, 398 F. Supp. 2d 1222, 1236-37 (S.D. Ala. 2005).  In the course of the struggle, Rachel was tased twice by McCann because Rachel was combative and aggressive, and refused to comply with commands.   The facts are similar to the *Bussey-Morrice v. Gomez*, 587 Fed. Appx. 621 (11th Cir. 2014).  In *Bussey-Morrice,* a mentally ill person ("Bussey") died following officers' attempts to gain control of him in a hospital lobby so that he could be involuntarily committed.  Bussey failed to comply with the verbal commands and after several warnings, Bussey was tased.

Bussey fell to the ground, and jumped back up to his feet, ripped the Taser prongs out of his body and started to approach the officers in a combative manner. *Id.* at 624. The two officers deployed their Tasers simultaneously three times each, but Bussey was "out of control" and continued fighting after being tased. After the third tasing, the officers physically restrained Bussey. After a prolonged struggle, Bussey stopped breathing. *Id.* at 625. The Court did not reach a conclusion as to whether a constitutional violation took place, but instead granted qualified immunity on the basis that the alleged illegality of the officer's behavior was not "clearly established". The same approach and ruling was also made in *Hoyt v. Cooks,* 672 F.3d 972 (11th Cir. 2012). Therefore, McCann's use of a Taser on a non-compliant arrestee is not a clearly established constitutional violation.

McCann use of his monadnock (baton) on Rachel's legs and the alleging kicking did not constitute a clearly established constitutional violation. "For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." *Brown v. Huntsville, Ala.,* 608 F.3d 724 at 740. Also, in *Byther ex rel. Byther v. City of Mobile*, 398 F. Supp. 2d 1222 (S.D. Ala. 2005), Judge Granade granted two officers qualified immunity against constitutional claims raised by a robbery suspect. Both officers admitted to hitting the suspect, and one officer admitted to kicking the suspect in the face/head multiple times in the course of securing his arms and effecting arrest. Judge Granade held that there

was no constitutional violation because the suspect attempted to evade and actively resisted arrest by failing to give the officers his hands after repeatedly being ordered to do although the suspect never attempted to hit or strike the officers in any way.  Judge Granade also held that even if the suspect's constitutional rights had been violated, the violation would not be clearly established because it was not readily apparent that the officers' conduct was unlawful.  *Id.* at 1238.  Therefore, McCann's alleged use of physical force on a noncompliant arrestee is not a clearly established constitutional violation.

### E. Deliberate Indifference: Plaintiff failed to establish that McCann was deliberately indifferent to Rachel's medical need.

*Plaintiff must show* that McCann violated Rachel's constitutional rights. McCann denies having knowledge of excited delirium and the accompanying risk of death *at the time* he encountered Rachel.  In order for Plaintiff to get around this, Plaintiff must show that McCann was "*both* [] aware of facts from which [a circumstantial inference can] be drawn that a substantial risk of serious harm exists," *and* that McCann in fact drew the inference.  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).  Plaintiff relies on 1) McCann was aware that both of the officers and Rachel were exhausted,  2) McCann was familiar from his training and from MO-2011-03 and 3) Lamar Dixon saw that Rachel was not moving.

McCann does not dispute that McCann was exhausted, however, Rachel continued to kick and resist until he was shackled.  (Ex. 4, Ripple Aff.).  Also,

exhaustion does not carry a risk of death.  Further, Plaintiff attempts to "impute" knowledge to McCann is problematic.  "Imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Therefore, Plaintiff's circumstantial evidence is insufficient to satisfy the subjective knowledge prong.

Even if Plaintiff can prove subjective knowledge of a known risk, she cannot prove that the risk was disregarded or that McCann's actions were more than mere negligence.  The officers realized that medical attention was needed at the same time as one another and assistance was called immediately.  After assistance was called, the EMT arrived within seconds to treat Rachel.  Rachel did not wait for even a minute for medical assistance after it was determined that he was not breathing.

Plaintiff's reliance on *Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005), is insufficient to establish a violation of Rachel's constitutional rights.  In *Owensby*, an arrestee displayed visible signs of medical need, a bloody face and minimal movement, that was disregarded by the officers who arrested him.  Likewise in *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008), officers acknowledged that a 350 pound arrestee stopped breathing, but refused to give him "mouth-to-mouth" resuscitation because they did not have protective equipment.  Unlike *Jones* and *Owensby*, this encounter with Rachel did not involve obvious

18

signs of medical need or a delay in medical care.  Rachel continued to kick until he was shackled.  Rachel's communications throughout the entire struggle was such that McCann had no reason to know that he was in medical danger.  McCann's assumption that Rachel was "passed out" not asphyxiated proves that McCann had no subjective awareness of a serious medical need because he too was exhausted. McCann's compliance with the Code Zebra protocol cannot be overlooked or minimized.

### F.  Deliberate Indifference: Clearly Established Right?

Even if McCann violated Plaintiff's constitutional rights by being deliberately indifferent to Rachel's medical need, the violation is not clearly established by Eleventh Circuit precedent.  Plaintiff relies on *Bozeman v. Orum,* (422 F. 3d 1265 (11th Cir. 1995) to assert that the alleged violation was clearly established.  However, the case is strikingly dissimilar to the case at bar.  In *Bozeman v. Orum,* officers attempted to subdue an inmate.  Other inmates clearly heard the inmate "gasping for air" and stating that he had had enough.  The inmate went silent and stopped moving.  The officers transported the inmate's lifeless body for 14 minutes.  The officers never called for medical assistance nor performed life saving measures even though there was ample evidence to prove that the officers were aware that the inmate was no longer breathing.  McCann's handling of Rachel is nothing like B*ozeman*.  While McCann was with Rachel,

Rachel continued to talk and did not show any signs of medical distress.  Once McCann realized Rachel was not breathing, medical assistance was called.  On these facts, Plaintiff cannot show that Rachel's medical needs were disregarded.

## III. DISCRETIONARY FUNCTION AND STATE-AGENT IMMUNITY IS APPROPRIATE BECAUSE PLAINTIFF FAILED TO SHOW THAT McCANN ACTED BEYOND HIS AUTHORITY.

Plaintiff contends that the evidence in this case is sufficient for the jury to find that McCann acted *negligently* in failing to adhere to the City's detailed and specific policy, MO-2011-03.  Statutory and common-law immunity only excepts malicious and willful conduct; not negligent acts.  Additionally, stating that McCann is *guilty* of "state law assault and battery" is not sufficient to satisfy Plaintiff's burden to show "willful, malicious, fraudulent, bad faith, and beyond his or her authority" to strip McCann of the defense.

McCann further adopts and incorporates City of Mobile's reply, arguments and exhibits attached thereto, as if fully set forth herein.

**WHEREFORE, PREMISES CONSIDERED,** Officer McCann respectfully moves the Court to grant his motion for summary judgment as to all claims in Plaintiff's Second Amended Complaint.

Respectfully submitted,

*/s/ Latisha Rhodes Davis*
MARK A. NEWELL (NEWEM3180)
LATISHA RHODES DAVIS (RHODL6152)
*Attorneys for Officer McCann*

20

**ARMBRECHT JACKSON LLP**
63 South Royal Street
1300 Riverview Plaza
Mobile, Alabama 36602
(251) 405-1300
(251) 432-6843 (fax)
Email: man@ajlaw.com
Email: lrd@ajlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 23rd day of March, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will electronically serve a filed copy on all counsel of record, including:

Henry H. Brewster, Jr., Esq.
205 N. Conception Street
Mobile, AL  36603-6477

Drew Edgar Haskins, IV, Esq.
2224 First Avenue North
Birmingham, AL  35203

Erik Stephen Heninger, Esq.
Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, AL  35203

Michael David Strasavich, Esq.
Betsy Palmer Collins, Esq.
Ricardo Andrew Woods, Esq.
Burr & Forman, LLP
P. O. Box 2287
Mobile, AL  36652

Thomas O. Gaillard, III, Esq.
Satterwhite, Druhan, Gaillard
 & Tyler Attorneys
1325 Dauphin Street
Mobile, AL  36604

James Brandyburg, Esq.
The Brandyburg Firm, P.C.
2607 Dauphin Street, Suite A
Mobile, AL  36606

Dixie Dan Powell, Esq.
Powell Injury Law, P.A.
602 South Main Street
Crestview, FL  32536

_/s/ Latisha Rhodes Davis_
LATISHA RHODES DAVIS